UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE ROSE #235893,

    Plaintiff,                                              Hon. Paul L. Maloney

v.                                                         Case No. 1:22-cv-891

SHAWNDA COPE, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion to Dismiss and for Summary Judgment on the Basis of Exhaustion. (ECF No. 24.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**.

**I.   Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility, has sued Lakeland Correctional Facility (LCF) employees Prison Counselor Shawnda Cope, Resident Unit Manager Jon Houtz, and LCF Deputy Warden Bryan Morrison based on events that occurred at LCF between March 19, 2019 and June 2019, when Plaintiff was transferred from LCF to the Gus Harrison Correctional Facility (ARF).

Plaintiff filed his amended complaint on September 26, 2022. He alleges that on March 19, 2019, he had a scheduled phone call with an attorney. Defendant Cope refused to leave during the phone call and forced Plaintiff to use speaker phone, preventing any privacy. Plaintiff repeatedly asked for privacy by asking Defendant Cope to leave the office or to take the phone off speaker.

Defendant Cope refused. The attorney then asked Plaintiff to tell Defendant Cope that the attorney wanted the phone taken off speaker; Defendant Cope refused and stated that the phone was broken and would only work on speaker phone. (ECF No. 4 at PageID.33–34.)

Afterwards, Plaintiff told Defendant Cope that he intended to file a grievance about the issue. Defendant Cope responded that if he did, she would issue a misconduct ticket. Plaintiff replied that he hadn't done anything and that he would report Defendant Cope for violating MDOC policy regarding falsified documents if she did issue a misconduct ticket. Later that day, Defendant Cope "followed through on her threat" and issued a misconduct ticket to Plaintiff. Plaintiff was ultimately sanctioned for the misconduct. (*Id.* at PageID.34–35.)

Plaintiff appealed the misconduct, arguing that it was issued in retaliation because he expressed an intent to file a grievance. Defendant Morrison denied the appeal, implying that Plaintiff was lying. Plaintiff claims, however, that prior to Defendant Morrison's denial, Defendant Houtz found that Plaintiff was correct and that inmates could have private legal calls if the parties requested it. Defendant Houtz told Plaintiff that all future legal calls would be held in a different area that allowed for privacy. Defendant Houtz then stated, however, "We don't do a lot of grievance writing at this prison, because this is the best prison in the MDOC for good prisoners, so I suggest you make this your last grievance if you want to stay at this prison, or you'll get shipped off." (*Id.* at PageID.35–36.)

Defendant Cope confronted Plaintiff for writing the grievance, stating he would "pay for that." From May 1, 2019, through June 4, 2019, Defendant Cope harassed Plaintiff by spreading rumors to other inmates that Plaintiff was the one causing her problems, "and as a result she was going to start making people do hard time <u>unless</u> [Plaintiff] stopped complaining." Plaintiff became fearful for his health and safety and sought mental health treatment because of his anxiety

2

over the issue. He asked the counselors for B- and C-Units if he could move; they agreed and told Plaintiff to tell his counselor "to call them to make it happen." Plaintiff asked Defendant Cope to move him to another unit; she refused, telling Plaintiff that he was not "going anywhere, except to another prison." (*Id.* at PageID.36–37.)

Plaintiff went to Defendant Houtz for help. Defendant Houtz stated that he was tired of hearing about Plaintiff's issues with Defendant Cope. Houtz told Plaintiff that he "need[ed] to find a way to make her happy or else things [were] going to get worse around [there] for [him]." Plaintiff told Defendant Houtz that he was trying to move to another unit; Defendant Houtz said the decision was solely up to Defendant Cope. (*Id.* at PageID.37–38.)

On May 31, 2019, Defendant Cope threatened to punish Plaintiff after he submitted a grievance and a complaint to the Ombudsman about her reading his outgoing mail. On June 4, 2019, Plaintiff was working out when he was summoned back to his housing unit. There, he was cuffed and escorted to the control center's temporary segregation cell by three officers. After 4-5 hours had passed, Defendant Cope walked past the cell and stated, "I told you I'd get you, now I'm going to get you placed in segregation and then I'm going to get rid of you." Defendant Cope and the coworker she was with then started "making baby crying noises in mockery." (*Id.* at PageID.38.)

Plaintiff was then taken to another room for a drug test, which was negative. Defendant Morrison then approached, and mocked Plaintiff, stating, "Yo, you's up to no good boy, all's you's had to do was chill out and not harass my employees with your stupid complaints Jive Turkey. Now you're headed to the box and out of candyland." Plaintiff was then taken to the segregation unit without receiving a Notice of Intent. Over the next three days, Plaintiff asked officers why he was in segregation and asked them to produce a misconduct report or a Notice of Intent providing

3

the reason. The officers responded that they did not know why Plaintiff was in segregation. Plaintiff spoke to Lieutenant Tackett (not a party) about the issue, and she said she would try to help. The next day, she returned and told Plaintiff that she tried to get him out, but that Defendant Houtz had a hold on Plaintiff. (*Id.* at PageID.38–39.)

When Plaintiff finally saw Defendant Houtz, he asked why he was in segregation and why there was a hold on him. Defendant Houtz told Plaintiff that Defendant Cope told him to lock Plaintiff up to "get rid of him due to all of the complaints he wrote on her." Plaintiff pleaded to be released, stating that he would not write any more grievances. Defendant Houtz responded, "It's too late, because Defendant Cope and Defendant Morrison want you out of here and they've agreed to putting you on the bus." (*Id.* at PageID.39–40.) Plaintiff was transferred to ARF sometime after June 4, 2019.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[1] Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

---

[1] Although Defendants bring their motion under both Rule 12(b)(6) and Rule 56, they fail to clarify which portion of the motion is brought as a motion to dismiss. While it appears that Defendants intended to assert the statute of limitations portion of the motion under Rule 12(b)(6), that aspect is more properly considered under the summary judgment standard because both aspects of the argument (the March 18, 2019 misconduct ticket and Grievance LCF-10-05-041-12c) rely on matters outside the pleadings. (ECF No. 25 at PageID.122–23.) In any event, given Plaintiff's concession that he is not asserting any claim based on the misconduct ticket or events set forth in Grievance LCF-10-05-041-12c, the proper motion standard is immaterial.

4

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Defendants support their motion, in part, with a Step III Grievance Report showing the grievances that Plaintiff pursued through Step III of the MDOC's grievance process near the time the events at issue occurred at LCF. (ECF No. 25-3.) Defendants contend that the following grievances related to Plaintiff's allegations in this action: (1) LCF-19-05-0497-28e (0497

Grievance); (2) LCF-06-0553-28e (0553 Grievance); (3) LCF-06-0552-28e (0552 Grievance); and (4) LCF-19-05-0431-12c (0431 Grievance).

### A. Statute of Limitations

Defendants contend that certain of Plaintiff's claims are barred by the three-year statute of limitations applicable to Section 1983 claims arising in Michigan. *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (holding that claims brought in Michigan under 42 U.S.C. § 1983 must be brought within three years of the date of injury); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam) (same). Because Plaintiff's complaint was postmarked September 21, 2022, and is deemed filed on that date under the mailbox rule, *see United States v. Smotherman*, 838 F.3d 736, 738 (6th Cir. 2016), Defendants contend that all of Plaintiff's claims arising before September 21, 2019, are time-barred, although they concede that the Sixth Circuit has held that the statute of limitations for a prisoner's civil rights claim is tolled while the prisoner is exhausting his administrative remedies as required by 42 U.S.C. § 1997e(a). (ECF No. 25 at PageID.122 (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)).)

Defendants contend that Plaintiff's retaliation claim based on the misconduct ticket that Defendant Cope wrote on March 19, 2019, is time-barred. Defendants note, correctly, that a prisoner claiming that a misconduct ticket was retaliatory must raise the issue of retaliation during the misconduct hearing. *See Smith v. Goulet*, No. 1:17-cv-618, 2018 WL 3688468 at *2 (W.D. Mich. Aug. 3, 2018) ("Because the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing."); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) (concluding that the plaintiff could only exhaust his retaliation claim for a minor misconduct ticket by asserting the claim during his misconduct hearing). The prisoner must also file an appeal if he fails to prevail

6

on his claim at the misconduct hearing. *See Johnson v. Newcomb*, No. 2:19-cv-93, 2020 WL 9311855, at *3 (W.D. Mich. May 1, 2020), *report and recommendation adopted*, 2021 WL 940590 (W.D. Mich. Mar. 12, 2021) (citing Mich. Dep't of Corrs. Policy Directive 03.03.105 ¶¶ UUU–XXX). Defendants argue that this claim is untimely because Plaintiff's appeal was denied on April 11, 2019. (ECV No. 25-4 at PageID.209.) Separately, they contend that any claims set forth in the 0431 Grievance are untimely because the Step III appeal was completed on August 26, 2019.[2] (25-3 at PageID.202.)

Plaintiff does not dispute that any claim based on the misconduct ticket and all claims asserted in the 0431 Grievance are time-barred, but he also states that he is not seeking relief for claims that fall outside the applicable statute of limitations. (ECF No. 30 at PageID.158.) Moreover, I note that the 0431 Grievance, which asserts denial of mental health care, does not pertain to any claim or Defendant in this action. In any event, I recommend that the Court grant Defendants' motion to the extent Plaintiff intended to assert a claim against Defendant Cope based on the misconduct ticket and determine that the 0431 Grievance does not exhaust any claim in this case.

    **B.**    **Failure to Exhaust**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant

---

[2] Defendants do not contend that the claims or issues raised in the 0497, 0552, or 0553 Grievances are time-barred. Indeed, the record shows that Plaintiff had not completed the exhaustion process for these grievances until after September 21, 2019. (ECF No. 25-3 at PageID.189, 192, 197.)

bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after

receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

### 1. Untimeliness

Defendants contend that none of the grievances at issue—0497, 0552, and 0553–could have exhausted any claim because "all three grievances were rejected at Step II as untimely received, and the rejections were affirmed at Step III." (ECF No. 25 at PageID.124.) Indeed, the administrative record shows that the Step II appeals for all of these grievances were rejected as untimely. (ECF No. 25-3 at PageID.190, 193, and 198.) In response, however, Plaintiff notes that after filing his Step I grievances, he was transferred to another facility and was required to request Step II/III appeal forms from the LCF grievance coordinator through the mail, which delayed his Step II appeals. (ECF No. 30 at PageID.256–57.)

Pursuant to the grievance policy, a "grievance shall not be rejected [as untimely] if there is a valid reason for the delay; e.g., transfer." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J.(5). The Step II appeal form for the 0497 Grievance stated that it was due June 25, 2019, and the Step II appeal forms for the 0552 and 0553 Grievances stated that they were due July 1, 2019. (ECF No. 25-3 at PageID.190, 193, and 198.) Plaintiff did not submit the appeal forms until July 8, 2019 (0497 Grievance), and July 30, 2019 (0552 and 553 Grievances). Plaintiff states in his affidavit that he did not receive the appeal form for the 0497 Grievance in the mail until July 8, 2019, and did not receive the appeal forms for the 0552 and 0553 Grievances until July 30, 2019. (ECF No. 30-1 at PageID.267.) This is consistent with his Step II appeals, in which he stated that he did not receive the 0497 appeal form until after the June 25, 2019 response date and received the appeal forms for the 0552 and 0553 Grievances "28 days late." (ECF No. 25-3 at PageID.190, 193, and 198.) Defendants offer no evidence to rebut Plaintiff's assertions. Courts have found that under such circumstances, prison officials rejecting a grievance as untimely should have found a

valid reason for delay in accordance with the foregoing provision. *See Bradford v. Isard*, No. 2:15-cv-119, 2016 WL 4144248, at *2 (W.D. Mich. Aug. 4, 2016); *Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851, at *11 (E.D. Mich. June 10, 2013). Defendants assert that the Step II rejection letter for the 0497 Grievance states that the appeal form was first provided to Plaintiff on June 20, 2019 (it actually says "it was sent to [Plaintiff] on this date") and that the Step II forms for the 0552 and 0553 Grievances state that the forms were provided to Plaintiff on June 20, 2019 (they actually say they were "issued" on that date). (ECF No. 34 at PageID.280–81.) These statements do not undermine Plaintiff's claim that he did not receive the appeal forms until after the due date because of mail delay. Thus, I conclude that the LCF Step II respondent improperly rejected all three grievances as untimely. Consequently, the Step III decisions upholding the Step II rejections were also erroneous.

In their reply, Defendants raise additional arguments regarding the 0497 Grievance.[3] First, they contend that Plaintiff never submitted his Step I grievance or response to Step III, so none of his claims were properly asserted in Step II or presented to Step III. (*Id.*) I find this argument unpersuasive for several reasons. First, the Step II response stated that the appeal was rejected for untimeliness, not because Plaintiff failed to include the Step I grievance or response. Second, although the Step III response stated that the Step III appeal was rejected, it did not specify the reason for the rejection. Defendants fail to provide an affidavit from the Step III respondent clarifying the reason for the rejection. Third, in his Step III appeal, Plaintiff stated that he did not include the Step I grievance and response because he did not receive these documents. (ECF No.

---

[3] Although I initially denied Plaintiff's motion for leave to file a sur-reply (ECF No. 39), upon further review of the reply, I conclude that Defendants in fact raise new issues that were not addressed in their opening brief. Accordingly, I have considered Plaintiff's proposed sur-reply brief. (ECF No. 36-1.)

25-3 at PageID.190.) Therefore, he made the Step III respondent aware that he was unable to provide the Step I documents. Finally, as set forth in *Margosian v. Martison*, No. 1:21-CV-1061, 2023 WL 1442426 (W.D. Mich. Feb. 1, 2023), relying on paragraph H of Policy Directive 03.02.130 and the absence of language in the policy requiring that specific documents be filed with the Step III appeal form, courts have concluded that failure to include the Step I grievance and response with the Step II appeal does not preclude proper exhaustion. *Id.* at *2 (collecting cases). Thus, Plaintiff's failure to submit the Step I grievance and response does not preclude proper exhaustion.

Next, Defendants assert that Plaintiff failed to explain why, after he received the Step II decision on July 24, 2019, he did not file the Step III appeal until October 1, 2019. (ECF No. 34 at PageID.281.) But as Plaintiff points out, this argument misconstrues the record, as July 24, 2019, was the date the respondent "[r]eturned" the response to Plaintiff (perhaps it deposited in the mail), not the date Plaintiff received it. (ECF No. 25-3 at PageID.190.)

### 2. Retaliatory Transfer

Defendants contend in their reply that Plaintiff failed to exhaust his retaliatory transfer claim because it was not raised in any of the grievances at issue, all of which were initiated prior to Plaintiff's transfer to ARF. (ECF No. 34 at PageID.280–81.) Plaintiff asserts in his sur-reply, as I understand it, that he does not allege the transfer as a basis for his retaliation claim. (ECF No. 36-1 at PageID.299 (stating that "the crux of the retaliation claims made in this complaint are hinged upon different unconstitutional acts that were perpertrated [sic] by the defendants." (ECF No. 36-1 at PageID.299.)

As Defendants correctly note, Plaintiff did not exhaust a retaliatory transfer claim. Moreover, even if Plaintiff asserts retaliatory transfer, I recommend that the claim be dismissed on the merits pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any

11

portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." (italics added)). It is well established that a transfer from one prison facility to another is generally insufficient to constitute adverse action for purposes of a retaliation claim. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) ("As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse.") (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)). In order for a transfer to constitute adverse action, the transfer must result in "foreseeable consequences" that would deter the protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005). For example, the Sixth Circuit has found that a transfer can constitute adverse action where it hinders the prisoner's access to the courts. *Id.* (noting that as a result of the transfer, the plaintiff not only lost his high paying job that he needed to pay his attorney, but also made consultation with the attorney more difficult by moving the plaintiff further away from her). Other situations that might render a transfer adverse are an increased security level, *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005); loss of employment, *Dykes-Bey v. McRoberts*, No. 16-1228, 2016 WL 11618608 (6th Cir. Sept. 13, 2016); and increased distance from visitors, *Johnson v. Hoffner*, No. 17-2102, 2018 WL 4488737, at *3 (6th Cir. Apr. 20, 2018); *Smith v. Weers*, No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018). Here, Plaintiff simply alleges that he was transferred from one prison to another, which does not, alone, suffice to establish adverse action. (ECF no. 4 at PageID.40–41.) Accordingly, I recommend that the Court review and dismiss this claim pursuant to Section 1915(e)(2)(B)(ii) as an additional basis for dismissal.

### 3. Defendant Morrison

Finally, Defendants contend that all of Plaintiff's claims against Defendant Morrison should be dismissed because Plaintiff failed to name him in any grievance. Plaintiff responds that he was unable to identify Defendant Morrison as a proper party to a grievance because it took him "months to discover that defendant Morrison willfully participated in the scheme by way of his signature." (ECF No. 30-1 at PageID.269.) The signature Plaintiff references is Morrison's signature on the transfer screen in connection with the transfer. (*Id.* at PageID.270.) If Plaintiff was alleging retaliatory transfer and had filed a grievance to that effect, his argument might have some merit. But as set forth above, Plaintiff is not asserting, has not exhausted, and/or fails to state a retaliatory transfer claim. To the extent Plaintiff asserts that Defendant Morrison participated in the decision to place him in segregation, Plaintiff does not allege that he was unaware of Defendant Morrison's identity for purposes of inclusion in the 0552 Grievance (concerning placement in segregation), and his complaint allegations show that Morrison was one of the prison officials involved in placing him in segregation (ECF No. 4 at PageID.38), yet Plaintiff failed to include Morrison in his grievance. Accordingly, I recommend that the Court grant the motion as to Defendant Morrison and dismiss Plaintiff's claims against him without prejudice.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** Defendants' motion (ECF No. 24) in part and **DENY** it in part as follows: (1) dismiss the retaliatory misconduct claim and any claim arising out of the 0431 Grievance as time-barred; (2) dismiss the retaliatory transfer claim for lack of exhaustion/failure to state a claim; (3) dismiss all claims against Defendant Morrison without prejudice for lack of exhaustion; and (4) deny the balance of the motion as to all

claims against Defendants Cope and Houtz that were exhausted in the 0471, 0552, and 0553 Grievances.[4]

Dated: January 12, 2024                                                      /s/ Sally J. Berens
                                                                            SALLY J. BERENS
                                                                            U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[4] Plaintiff has filed a motion to compel Defendants to provide "nonevasive answers" to his exhaustion discovery requests. (ECF No. 40.) I find no reason to delay ruling on the instant motion until a decision on the motion to compel because the answers Plaintiff seeks would not affect the recommendations herein.